UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIELLE D. : | |
| : | |
| v. : | C.A. No. 21-00205-WES |
| : | |
| KILOLO KIJAKAZI, Commissioner : | |
| Social Security Administration : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff filed her Complaint on May 10, 2021, seeking to reverse the Decision of the Commissioner.  On February 4, 2022, Plaintiff filed a Motion to Reverse the Decision of the Commissioner.  (ECF No. 15).  On March 4, 2022, Defendant filed a Motion to Affirm the Commissioner's Decision.  (ECF No. 16).  On April 1, 2022, Plaintiff filed a Reply.  (ECF No. 18).  The Commissioner's Sur-reply was filed on April 11, 2022.  (ECF No. 20).

This matter has been referred to me for preliminary review, findings, and recommended disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the parties' submissions, and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act.  Consequently, I recommend that Plaintiff's Motion to Reverse (ECF No. 15) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 16) be GRANTED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for DIB on February 14, 2017 (Tr. 198-204) and SSDI (Tr. 205-212) alleging disability since November 1, 2016.  The applications were denied initially on March 22, 2017 (Tr. 76-85, 86-95) and on reconsideration on July 19, 2017. (Tr. 98-111, 112-125).  Plaintiff requested an Administrative Hearing.  On February 27, 2018, a hearing was held before Administrative Law Judge Berry H. Best (the "ALJ") at which time Plaintiff, represented by counsel, and a Vocational Expert ("VE") appeared and testified.  (Tr. 38-73).  The ALJ issued an unfavorable decision to Plaintiff on April 26, 2018.  (Tr. 16-32).  The Appeals Council denied Plaintiff's request for review on September 21, 2018.  (Tr. 5-7).  Therefore, the ALJ's decision became final.  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in not properly considering Plaintiff's borderline intellectual functioning and other mental health limitations and that the ALJ also failed to properly consider Plaintiff's pain and physical limitations.

The Commissioner disputes Plaintiff's claims on both accounts and contends that there is no reversible error on this record.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart,

274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. Id.

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the

claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

    A.    **Treating Physicians**

Substantial weight should be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of HHS, 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of HHS, 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of HHS, 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir.

1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of HHS, 758 F.2d 14, 17 (1st Cir. 1985).

  **D.**  **The Five-step Evaluation**

  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

  In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as

to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of HHS, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E.     Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d

at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

1. **Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4) Treatment, other than medication, for relief of pain;

    (5) Functional restrictions; and

>   (6)   The claimant's daily activities.

Avery v. Sec'y of HHS, 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

>   **2.   Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

>   **V.   APPLICATION AND ANALYSIS**
>
>   **A.   The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 2, the ALJ found that Plaintiff suffered from the following severe impairments: a depressive disorder, an anxiety disorder, fibromyalgia, and degenerative disc disease.  (ECF No. 15-1 at p. 7).  The ALJ concluded at Step 3 that these impairments did not meet or medically equal any of the Listings.  Id. at p. 9.  As to RFC, the ALJ concluded that Plaintiff could perform a limited range of light work.  Id. at p. 11. Based on

this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any of her past relevant work. Id. at p. 22. However, the ALJ found at Step 5 that Plaintiff could perform light and sedentary jobs that exist in significant numbers in the national economy and thus was not disabled. Id. at pp. 22-23.

**B.     Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Mental Impairments**

Plaintiff contends that the ALJ erred in not properly considering her borderline intellectual functioning and other mental health limitations. (ECF No. 15 at p. 3). In support of this argument, Plaintiff notes that Dr. Alex Turchetta conducted a psychological evaluation of her in October 2019. Dr. Turchetta diagnosed Plaintiff with borderline intellectual functioning, panic disorder, unspecified bipolar disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder. (Tr. 1173).

The ALJ Decision thoroughly outlined the consultative psychological evaluation conducted by Dr. Turchetta and noted Plaintiff's reported "inability to focus and concentrate…emotional concerns [and]…possible presence of an attentional disorder." (ECF No. 15-1 at p. 17). Further, the ALJ elaborated that Plaintiff "self-reported severe depression and severe anxiety" as well as "poor sleep, low motivation, isolation, low self-esteem, and inconsistent appetite, and sadness at times." Id. The ALJ also noted that Plaintiff obtained a "Full Scale IQ Score of 71, falling within the Borderline Range." Id. Finally, the ALJ reported that Plaintiff was assessed with "attention deficit hyperactivity disorder, combined presentation, post-traumatic stress disorder, an unspecified bipolar disorder, a panic disorder, and borderline intellectual functioning." Id.

The ALJ discussed Dr. Turchetta's examination in depth and ultimately concluded that "[t]he doctor gave a conclusory opinion and did not give a precise functional assessment. Accordingly, it

is not probative and not given weight." Id. at p. 22. Instead, the ALJ favored the mental health assessments conducted by state agency reviewing psychiatrist Dr. Susan Killenberg in July 2019 and psychologist Dr. Jeffrey Hughes in August 2019. (Exhs. 15A and 18A). The ALJ further noted that evidence was submitted after the dates of those exams but concluded that "the subsequent evidence does not warrant a change in the pertinent findings…or the persuasiveness/weight of their opinions." (ECF No. 15-1 at p. 20).

Plaintiff makes two specific arguments concerning Dr. Turchetta's examination. First, Plaintiff's contends that her Full Scale IQ score of 71 "very closely" borders the requirements for Listing 12.05 (Intellectual Disorder) and objectively undermines the ALJ's findings that Plaintiff had only a mild limitation with regard to understanding, remembering, and applying information, and a moderate impairment with regard to concentration, persistence, and pace. This argument, however, is unsupported by the totality of the evidence in this case. While Plaintiff highlights the IQ score, it represents only part of the picture. "'Standing alone, IQ scores are not inherently indicative of' borderline intellectual functioning." Kim M. v. Kijakazi, No. 21-133-GZS, 2022 WL 42914, *3 (D.Me. Jan. 4, 2022). In the present case, Plaintiff's contention that her IQ score reflects borderline intellectual functioning is contradicted by her prior work history and her overall level of functioning. Prior to her claimed disability onset date, Plaintiff had a long work history in hospitals including work as both a phlebotomist and a lab specimen processor. In addition, the ALJ also reasonably observed that the record reflects that Plaintiff was able to independently maintain her household including caring for her children, bringing them to school, shopping, managing her finances, preparing meals, and socializing on the phone. (Exh. 6E). The IQ score and Dr. Turchetta's diagnosis of borderline intellectual functioning reasonably appear to be an outlier inconsistent with the longitudinal record, and Plaintiff has shown no error in the ALJ's treatment of that information.

Second, Plaintiff contends that Dr. Turchetta's October 2019 evaluation evidenced "worsening" of her condition and supported the claimed limitations. (ECF No. 15 at p. 5-6). To prevail on this argument, Plaintiff must point to evidence of a "sustained (and material) worsening" of her mental and/or physical condition after the state agency opinions are rendered to cause them to be stale and outdated. See, e.g., Phan v. Colvin, C.A. No. 13-650L, 2014 WL 5847557, at *15 (D.R.I. Nov. 12, 2014). Plaintiff has not met that burden here. Dr. Turchetta's note that Plaintiff would have difficulty sustaining attention and that she displayed impulsivity was contradictory to the overall evidence of record. On September 20, 2019, Plaintiff underwent a mental status examination during a psychiatric medication management appointment that noted she was "not distractible," "not inattentive," and "not disinterested." (Tr. 1215). Further, these findings were repeated following Dr. Turchetta's assessment from October 2019 through February 2020. (Tr. 1218, 1220, 1222, 1224, 1226). Accordingly, the ALJ had a reasonable basis upon which to discount Dr. Turchetta's examination, and Plaintiff has not shown that it evidences a "sustained and material worsening" of her conditions. Thus, it was not error on this record for the ALJ to rely on the state agency opinions of Dr. Killenberg and Dr. Hughes and to discount Dr. Turchetta's findings.

### C. Substantial Evidence Supports the ALJ's Subjective Symptom Analysis

Next, Plaintiff details the "constant daily pain" she experiences and contends the ALJ did not appropriately consider her symptoms. She also argues that the ALJ erred in his analysis of the opinion that her primary care physician, Dr. Thomas Green, rendered in October 2017 in which he opined that she would be unable to work due to several limitations.[1] (ECF No. 15 at p. 13). The Commissioner

---

[1] Plaintiff additionally argues that the ALJ "holds against her that she does not want to take sedating medication while caring for her children." (ECF No. 15 at p. 12). Plaintiff characterizes this analysis "unjust" and argues the Court should not encourage her to do "something to impair her while with her children" and that it is not socially acceptable. Id. at p. 12-13. The Court views the ALJ's description of her treatment history as purely factual and rejects the characterization suggested by Plaintiff.

argues that the ALJ considered all of Plaintiff's subjective symptoms but found that the intensity, persistence and limiting effects were not entirely consistent with the medical and other evidence of record. (ECF No. 16 at p. 14). Further, the Commissioner argues that the ALJ applied the appropriate standard and that substantial evidence supports the ALJ's decision.

The Court first considers the ALJ's analysis of Plaintiff's subjective symptoms. The ALJ accurately noted Plaintiff "has not required hospitalization or surgery" and that surgery had not been recommended. (ECF No. 15-1 at p. 18). Further, the ALJ noted that Plaintiff attempted, without success, to use physical therapy, water therapy, pain management, injections, and various medications. Id. The ALJ also accurately observed that there were no MRIs, EKGs or nerve conduction studies that evidenced disability. Id. at p. 19. Moreover, "physical examinations did not show significant abnormalities or deficits. The claimant was routinely and repeatedly noted to be well developed and in no acute distress." Id. The ALJ articulated sufficient reasons for his credibility assessment and, since those reasons are supported by substantial evidence, they are entitled to deference. In short, as argued by the Commissioner, the ALJ considered Plaintiff's subjective symptoms, such as pain, but supportably determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. Plaintiff has shown no reversible error in the ALJ's assessment.

Next, the Court considers the ALJ's analysis of the opinions of Plaintiff's primary care physician, Dr. Green.[2] In the present case, the "treating physician rule" applies. 20 C.F.R. § 416.927(d). Generally, more weight is given to treating sources and controlling weight is given if the opinion is medically supported and not inconsistent with other substantial evidence of record. 20

---

[2] The Commissioner argued that Plaintiff waived her argument concerning Dr. Green by presenting only skeletal briefing. The Court rejects this argument and addresses the issue on the merits.

C.F.R. § 416.927(d)(2). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. Id.

In his decision, the ALJ discusses the October 2017 Medical Source Statement completed by Dr. Green which concluded that Plaintiff would be "unable to work" and fully supports his conclusion that the assessment was not probative. In conducting this analysis, the ALJ properly applied the treating physician rule to Dr. Green's opinion. In particular, for a treating physician's opinion to be entitled to controlling weight, that opinion must be supported by objective medical findings, and not only subjective complaints. See 20 C.F.R. § 416.927(c)(2) (treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques").

The analysis completed by Dr. Green identified "lumbar strain" and "sciatica" as Plaintiff's diagnoses and noted the absence of psychological conditions contributing to Plaintiff's symptoms and functional limitations. (Tr. 484-485). Dr. Green indicated that Plaintiff would need one to two unscheduled breaks of approximately twenty-minutes' duration during each workday. (Tr. 485). He also opined, inter alia, that she would be off task 20% of the workday and would likely be absent from work four days per month. (Tr. 487).

The ALJ reviewed Dr. Green's Statement and noted that he assessed her with "an extremely limited less than sedentary functional assessment…" that was inconsistent with his own treatment records that "do show complaints of pain; but many notes show physical examinations that were not consistent with disabling limitations." (ECF No. 15-1 at p. 21). See 20 C.F.R. § 416.927(c)(4). Further, the ALJ went on to reasonably note that Dr. Green's Statement was "not supported by the longitudinal record, including the State agency assessments [ ]; and are inconsistent with her ability to maintain work, while not at SGA levels, at the same level she had maintained prior to her alleged

onset date of November 1, 2016." Id. Ultimately, the ALJ found that Dr. Green's assessment was not "probative" and not entitled to weight because his own treatment records "do not fully support the limitations he found." Id.

Although Plaintiff may disagree with his conclusion, the bottom line is that the ALJ properly evaluated Dr. Green's opinion under the treating physician rule. The ALJ adequately explained the reasons for his conclusions as to the weight to be given to Dr. Green's opinion, and his reasons are supported by substantial evidence of record. Thus, they are entitled to deference, and Plaintiff has not established any legal error as to the ALJ's analysis of Dr. Green's opinion.

**CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse (ECF No. 15) be DENIED and that the Commissioner's Motion to Affirm (ECF No. 16) be GRANTED. I further recommend that Final Judgment enter in favor of the Commissioner.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 12, 2022